# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA ALVAREZ MARIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:24-cv-00055-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT; AND DIRECTING CLERK OF THE COURT TO ENTER JUDGMENT FOR DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND TO CLOSE THIS MATTER<br><br>(ECF Nos. 12, 14, 15) |

## I.

## INTRODUCTION

Yolanda Alvarez Marin ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of the Commissioner be vacated and the case be remanded for further proceedings, arguing the Administrative Law Judge's ("the ALJ") mental residual functional

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (See ECF Nos. 8, 9, 10.)

capacity ("RFC") assessment is not supported by substantial evidence because the ALJ failed to fully develop the record.

For the reasons explained herein, Plaintiff's motion for summary judgment shall be denied and Defendant's cross motion for summary judgment shall be granted.

## II.

## BACKGROUND

### A.   Procedural History

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and an application for supplemental security income on January 8, 2020. (AR 87, 88.) Plaintiff's applications were initially denied on September 17, 2020, and denied upon reconsideration on April 6, 2021. (AR 117-21, 131-36.) Plaintiff requested and received a hearing before ALJ Young Bechtold. Plaintiff appeared for a telephonic hearing on January 24, 2023, and testified with the assistance an accredited disability representative and a Spanish interpreter. (AR 35-62.) On February 8, 2023, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 14-29.) On November 7, 2023, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

### B.   The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, February 8, 2023:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023.
2. Plaintiff has not engaged in substantial gainful activity since April 1, 2019, the amended alleged onset date.
3. Plaintiff has the following severe impairments: an anxiety disorder, a depressive disorder, and posttraumatic stress disorder.
4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
5. Plaintiff has the residual functional capacity to perform a full range of work at all

exertional levels but with the following nonexertional limitations: Plaintiff can understand, remember, and carry out simple instructions. She cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. Plaintiff can have frequent interaction with supervisors and coworkers and occasional interaction with the public. In addition, she can deal with occasional changes in a routine work setting.

6. Plaintiff can perform past relevant work as a laborer, stores. This work does not require the performance of work-related activities precluded by her residual functional capacity.

7. Plaintiff has not been under a disability, as defined in the Social Security Act, from April 1, 2019, through the date of this decision.

(AR 19-29.)

## III.

## LEGAL STANDARD

**A.     The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC,

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B. Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff alleges that the ALJ erred by failing to further develop the record and therefore the RFC determination is not supported by substantial evidence in the record. (Pl.'s Motion for Summary Judgment ("Mot.") 12, ECF No. 12.) Plaintiff contends that the ALJ correctly rejected the findings of the non-examining, non-treating agency consultants that Plaintiff did not have a severe mental impairment, but therefore the ALJ created an evidentiary gap in the record because there were no other opinions regarding Plaintiff's mental abilities. Plaintiff asserts that the ALJ crafted the RFC out of "whole cloth" without any medical guidance and the ALJ had a duty to develop the record with a consultative mental examination given the insufficiency in the record. (Id. at 13.) Plaintiff argues that the ALJ needs some form of guidance from a health care professional as to the impact that Plaintiff's mental impairments have on her ability to work on a function-by-function basis. (Id. at 14.) Plaintiff contends that the ALJ had no such guidance here and crafted a highly specific mental RFC that is without any logical bridge to the medical evidence of record. Plaintiff argues that the error is not harmless. (Id. at 15.) Plaintiff contends that remand is appropriate for further development of the record. (Id. at 16.)

Defendant moves for summary judgment and counters that it is the claimant's burden to prove disability, and the ALJ did not need to further the develop the record. (Def.'s Cross-Mot. for Summary Judgment ("Cross-Mot.") 2, ECF No. 14.) Defendant argues that the ALJ considered the

1 record, including the prior administrative findings of six state agency consultants and did not find
2 that the record was insufficient to properly evaluate the evidence. (Id. at 2-3.) Defendant contends
3 that the RFC need not perfectly correlate to any functional assessment from a medical source, as
4 the RFC is an administrative determination reserved for the Commissioner and the Court should
5 find that Plaintiff's argument fails. (Id. at 3.) Further, Defendant asserts that the ALJ has broad
6 latitude in ordering a consultative examination and here no such examination was necessary. (Id.
7 at 3-4.) Defendant argues that the ALJ permissibly found that Plaintiff's limitations were beyond
8 those suggested by a medical source and the Court should find that the record was sufficiently
9 developed. Defendant asserts that Plaintiff relies on caselaw that does not relate to the situation
10 here, since the ALJ here found that Plaintiff was more limited than suggested by the medical
11 sources. (Id. at 4.) Finally, Defendant argues that Plaintiff's argument that the issue was not
12 forfeited because they are not offering new evidence should be rejected as Plaintiff is represented
13 on appeal by the same firm that represented her at the hearing and affirmed that the record was
14 complete at the hearing. (Id. at 4-5.)

15 Plaintiff replies that this court recently rejected the argument that the issue was forfeited
16 because it was not raised before the ALJ in Balli v. Comm'r of Soc. Sec., No. 1:21-CV-00645-
17 EPG, 2022 WL 14751485 (E.D. Cal. Oct. 25, 2022). Plaintiff contends that she does not attempt
18 to introduce new factual evidence into the record on appeal but is arguing that there is an evidentiary
19 gap in the record and therefore the ALJ had a duty to further develop the record. (Pl.'s Reply
20 ("Reply") 2, ECF No. 15.) Plaintiff argues that the ALJ cannot usurp the role of doctors, especially
21 when interpreting highly technical medical evidence. (Id. at 3.)

22      **A.**    **Duty to Develop the Record Legal Standard**

23 When applying for disability benefits, the claimant has the duty to prove that she is disabled.
24 42 U.S.C. § 423(c)(5)(A). The ALJ has an independent "duty to fully and fairly develop the record
25 and to assure that the claimant's interests are considered." Widmark v. Barnhart, 454 F.3d 1063,
26 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). The ALJ has
27 a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the
28 record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d

453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). Further, the ALJ's duty to fully develop the record is heightened where the claimant may be mentally disabled and, therefore, unable to protect her own interests. Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992). The ALJ "must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Higbee, 975 F.2d at 561 (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)).

### B. Medical Record

In considering Plaintiff's allegations that her mental impairments precluded her from working, the ALJ considered the following records.[5] (AR 22.)

---

[5] The following findings were not specifically addressed by the ALJ in addressing Plaintiff's mental health impairments, however the ALJ did note that mental examination findings in these records routinely revealed a depressed and anxious mood.

On April 1, 2019, Plaintiff was seen complaining of anxiety and insomnia since her mobile home caught fire and burned down. She was noted to be depressed, "sad". Examination was unremarkable other than an eye issue. (AR 525.)

On June 10, 2019, Plaintiff was seen complaining of depression and anxiety. (AR 591.) Other than a depressed and anxious mood and excited motor activity, mental examination is unremarkable. (AR 592-93.)

Plaintiff was seen on July 8, 2019, reporting flashbacks, depression, suicidal ideation (passive only), and anxiety that Gabapentin helps a little. Mental examination is unremarkable other than a depressed and anxious mood. (AR 589.)

On August 19, 2019, Plaintiff was seen reporting that she feels tired most of the time. She had stopped taking her Prazosin for ten days because of blurry vision, but her fear increased so she resumed it. Plaintiff denied any flashbacks. She reported depression and anxiety, but the Gabapentin helps. Other than a depressed and anxious mood, mental examination is unremarkable. (AR 587.)

Plaintiff was seen on December 16, 2019. Other than a depressed mood, mental examination is unremarkable. (AR 578.)

On July 8, 2020, Plaintiff did not show for her appointment. (AR 630.)

Plaintiff was seen on May 6, 2020, and reported that her medications help her more some days than others. Mental examination was unremarkable other than depression is noted. (AR 565.)

Plaintiff was seen on December 9, 2020, and examination was unremarkable. (AR 607.)

Plaintiff was a no show on October 26, 2020. (AR 622.)

On February 1, 2021, Plaintiff was a no show for her appointment. (AR 614.)

On February 24, 2021, Plaintiff reported having Covid a few weeks prior and having memory and confusion issues since. She was sleeping well, and her medication was adequate. She was having flashbacks 3 to 4 days a week, depression 2 days a week, anxiety 2 to 3 days a week and was avoiding people. She was taking her Gabapentin, but usually forgets her third dose. She is noted to have a depressed and anxious mood, but mental examination was otherwise unremarkable. (AR 681.)

On February 24, 2019, Plaintiff saw Dr. Zakharyan complaining of two headaches a week, anxiety and being "scared of everything" every day. She denied thoughts of harming herself or her baby. She was still taking Norco for headaches, and had dizziness on exertion for two weeks, such as cooking or cleaning and felt tired. Examination was normal. She was diagnosed with depression, Prozac was prescribed, and she was referred to psychiatry. (AR 521.)

On April 24, 2019, Plaintiff was seen by Dr. Zakharyan complaining of headaches and insomnia. Physical examination was unremarkable. She was diagnosed with anxiety, depression, and insomnia. (AR 523, 698.)

Plaintiff was seen at Turning Point on May 22, 2019, complaining of anxiety, depression, trauma, impairment in her activities of daily living, problems sleeping and with concentration, aggressive symptoms and irritability since her house had burned down five months prior. (AR 540.) Mental status examination shows Plaintiff's behavior was within cultural norms. She was cooperative and had adequate social skills. Speech was normal. Mood was worried and affect was congruent. Plaintiff was oriented to person, place, time, and situation. She denied delusions, hallucinations, and distortions. Intelligence was estimated to be average. Thought flow was logical and thought content was normal. (AR 542.) Plaintiff's immediate, short term, recent, and long-term memory was fair. Abstraction, interpretations, judgment, and insight were fair. (AR 543.) Plaintiff was diagnosed with major depressive disorder, recurrent, moderate; unspecified anxiety disorder; and reaction to severe stress. (AR 544.)

---

On September 20, 2021, Plaintiff reported that she had run out of her medication one month prior. She did not notice any increase in her symptoms. Her sleep was poor, she was depressed 4 days a week, anxious 4 to 5 days a week and had flashbacks 2 to 3 times per week. Mood was noted to be depressed and anxious, mental examination was otherwise unremarkable. (AR 661.)

Plaintiff failed to show for appointments on April 19, 2021, June 7, 2021, August 23, 2021, and September 8, 2021. (AR 665, 669, 672, 675.)

On January 19, 2022, Plaintiff was seen reporting she was sleeping at night, but still needed to nap during the day. She was having nightmares 2 times a week, depression 3 days per week, and anxiety 3 times per week and Gabapentin was helping with her anxiety. Her energy was sometimes low, but often normal and appetite was normal. Other than a depressed and anxious mood, mental examination was unremarkable. (AR 645.)

On March 9, 2022, Plaintiff failed to show for an appointment. (AR 643.)

9

Plaintiff was seen on September 30, 2019, reporting her sleep was better, depression had increased, her last auditory hallucination was three weeks prior, she sometimes forgets to take her Gabapentin and will take it later and it helps. She was planning to return to work in a few months but was afraid to leave her baby with strangers while he was so young. Other than a depressed mood, mental examination was unremarkable. (AR 584.)

On November 4, 2019, Plaintiff was seen reporting that she sleeps okay when taking her medication, she is not depressed but is scared of everything, feels triggered by talks of Christmas and getting gifts for the kids since Christmas is when her house burned down, and Gabapentin is helping her anxiety although she has anxiety on and off through the day. Other than a depressed and anxious mood, mental examination is unremarkable. (AR 581.)

Plaintiff was seen on December 16, 2019, reporting the anniversary of the house fire was in two days and she was feeling scared, nervous, not sleeping at well at night, but sleeping during the day, and her depression and anxiety have worsened. She reported that the Gabapentin was not really helping. Mental examination notes a depressed mood but is otherwise unremarkable. (AR 575.)

Plaintiff was seen on March 9, 2020, reporting that she ran out of medication two weeks prior and without her medications all her symptoms had increased over the prior two weeks. Other than an anxious mood, mental examination is unremarkable. (AR 572.)

On May 4, 2020, Plaintiff failed to show for her appointment.[6] (AR 569.)

Plaintiff was seen on June 10, 2020, reporting that she goes to sleep at 11:30 p.m. and wakes at 2:00 a.m. to make lunch for her husband and has trouble going back to sleep. She reported depression, flashbacks, anxiety which was helped with Gabapentin, and headaches. Plaintiff was noted to have a depressed mood, but mental health examination was otherwise unremarkable. (AR 561.) Plaintiff had stopped taking Prozac two weeks prior because she felt it was not helping and she was losing a lot of hair. (AR 562.) She was to increase Prazosin and Gabapentin, discontinue

---

[6] The ALJ noted findings on this date, however, the notes record a no show despite the findings being marked on the record.

Tramadol, continue Zoloft, and start Seroquel. (AR 563.)

On July 8, 2020, Plaintiff failed to appear for her appointment.[7] (AR 557.)

There is a note from Plaintiff's therapist stating that she was seen on September 8, 2020, reporting she stopped taking her Prazosin and has noticed that her depression increased, she has low motivation, is isolating and not wanting to do things. On August 17, 2020, Plaintiff had reported that she was feeling more motivated. (AR 626.)

Plaintiff was seen on December 7, 2020, stating that she stopped taking the Prazosin for a while and only takes it occasionally. She has flashbacks 4 days a week, depression 5 to 6 days a week, anxiety 4 days a week and Gabapentin helps, and passive suicidal ideation. Other than a depressed and anxious mood, mental examination is unremarkable. (AR 618.)

On May 14, 2021, Plaintiff was seen for a video appointment complaining of feeling extremely tired most days and needing to lay down and rest. She reported low motivation, energy, and that she forgets to eat meals. (AR 634.) Mental examination notes that Plaintiff was cooperative, speech was soft, and mood was depressed. Plaintiff was oriented to person, place, time and situation. She denied visual hallucinations but reported that she had some auditory hallucinations two times six months prior. She denied delusions and distortions. (AR 636.) Intelligence is noted to be average, thought flow is coherent, thought content is helpless/hopeless, worthless. Immediate and recent memory were intact. Long term memory was fair. Abstraction, and interpretation were intact. Judgment and insight were fair. Plaintiff reported that she was drinking one to two beers two days a week to manage feeling sad and that when she drinks, she is more "relaxed" and is able to complete tasks at home. (AR 637.)

On November 8, 2021, Plaintiff reported that she was taking her medications daily and was not sleeping during the day. She was having less depression and higher energy for 2 to 3 hours a day. She was taking her Gabapentin but forgetting her mid-day dose. She was not having nightmares; her flashbacks were not as bad, and she was not as sad afterwards. Mood is noted to be anxious and depressed, mental examination was otherwise unremarkable. (AR 653.)

---

[7] The ALJ noted findings on this date, but again the record reflects that Plaintiff failed to show for the appointment.

On December 13, 2021, Plaintiff was seen reporting that her medications were working well but the season gets her down. She was having depression 5 days a week and thinks it is worse now due to the Christmas season because this is when her trailer caught on fire. She was having anxiety 5 days a week and flashbacks 4 to 5 days a week. Other than a depressed and anxious mood, mental examination is otherwise unremarkable. (AR 649.)

**C.    Analysis**

At step 2, the ALJ considered the medical record and Plaintiff's testimony and found that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; and adapting or managing herself. (AR 22.) In addressing the residual functional capacity, the ALJ considered the generally normal findings on mental examination, as well as Plaintiff's testimony regarding her symptoms and daily activities. (AR 23-25.)

The ALJ also considered the opinions of the State agency consultants, Drs. Caruso-Radin and Khan who found that Plaintiff did not have a severe mental impairment and found that they were unpersuasive because they were inconsistent with the medical evidence, and they did not review the entire record. (AR 25-26.) The ALJ then went on to find that Plaintiff could understand, remember, and carry out simple instructions, was unable to perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; can have frequent interaction with supervisors and coworkers and occasional interaction with the public; and can deal with occasional changes in a routine work setting. (AR 23.)

The Court finds that the cases Plaintiff relies on to argue that the ALJ substituted his own interpretation of the medical evidence are distinguishable. In Vasquez v. Berryhill, No. 1:16-CV-00448-GSA, 2017 WL 2633413, at *5 (E.D. Cal. June 19, 2017), the ALJ rejected a consultative physician opinion because he found it was vague and was based on the plaintiff's subjective reports rather than objective testing. However, the physician's opinion was based on extensive objective testing that indicated the plaintiff was moderately limited in all areas and the ALJ's findings were not accurate. Further, after the agency consultants completed their review of the medical record, the plaintiff reported additional memory problems to his treating physician which were never

evaluated. Id. at 6. The ALJ attempted to address these new memory complaints by stating that the plaintiff had a subsequent CT scan of his head that showed no acute abnormalities to explain his memory loss, however, no psychologist or medical provider came to this conclusion and the ALJ is not allowed to use his own medical judgment in lieu of a medical expert. Id. The Court remanded for the ALJ to either properly reject the moderate limitations opined by the consultative examiner or incorporate them into the RFC. Id. at *7.

The ALJ in Cortez v. Colvin, No. 1:15-CV-00102-EPG, 2016 WL 3541450 (E.D. Cal. June 24, 2016), did not rely on the functional assessments of state agency reviewers, and improperly credited an opinion consisting only of diagnoses and descriptions of her clinical observations that did not indicate how the impairments would affect the plaintiff's ability to work, while rejecting the opinion of the plaintiff's treating physician finding that the plaintiff had improved on medication. Cortez, 2016 WL 3541450 at *5. The Court found that there was an absence in the record indicating the degree to which the plaintiff's mental impairments affected him and the degree if any to which his medications impaired his ability to work nor was there any medical review after the plaintiff began taking medication. Id. at *6.

Similarly, in Mack v. Saul, No. 1:18-cv-01287-DAD-BAM, 2020 WL 2731032 (E.D. Cal. May 26, 2020), the Court found that the ALJ erred by interpreting new medical records, including an MRI of Plaintiff's spine and imaging of his knee and objective findings which showed reduced range of motion in his knee on examination and that his knee repair had failed. These records contained no indication of how the diagnosed impairments impacted the plaintiff's ability to work. Mack, 2020 WL 2731032, at *2.

Unlike Vasquez, Cortez, and Mack, the ALJ here did not interpret raw medical evidence to find Plaintiff less limited than opined by medical providers but considered the lack of objective mental findings in the mental health records and Plaintiff's testimony regarding her symptoms to find her more limited than the State agency physicians opined. (AR 25.) As stated above, the ALJ has a duty to develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. Mayes, 276 F.3d at 459-60; Tonapetyan, 242 F.3d at 1150. The ALJ did not find that the record was inadequate nor has Plaintiff

13

pointed to any ambiguous evidence to support the argument that the duty to further develop the record arose. Rather, Plaintiff argues that there is no medical opinion that found Plaintiff to have moderate limitations or how those limitations would affect her ability to work which leaves a gap in the record.

Although Plaintiff argues that the ALJ requires some type of guidance from a healthcare professional, the determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan, 260 F.3d at 1049. In making this determination, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. Andrews, 53 F.3d at 1039–40.

Here, the State agency physicians found that Plaintiff did not have a severe mental impairment, but the ALJ did partially credit Plaintiff's subjective complaints, considered her medical diagnoses, and the generally normal objective findings to determine that Plaintiff had moderate limitations in all areas of functioning. (AR 22-23.) The ALJ did incorporate these moderate limitations into the RFC by limiting Plaintiff to simple instructions, no work requiring a specific production rate, frequent interaction with supervisors and coworkers and occasional interaction with the public, and occasional changes in a routine work setting. (AR 23.) The Court finds that the ALJ did not interpret the raw medical records and usurp the role of the medical providers as alleged by Plaintiff, but the ALJ considered Plaintiff's subjective complaints, the findings of a depressed and anxious mood, and largely normal mental status examinations findings to determine that Plaintiff was more limited than opined by the State agency physicians. See Nacoste-Harris v. Berryhill, 711 F. App'x 378, 378–80 (9th Cir. 2017) (The ALJ's inclusion of additional RFC limitations benefits, rather than prejudices, the claimant).

While Plaintiff disagrees with the finding that her mental impairments do not preclude her from working, she did not present any medical opinion that she was more limited than opined by the State agency physicians. See 20 C.F.R. § 416.945(a)(3) ("In general, you are responsible for

14

providing the evidence we will use to make a finding about your residual functional capacity."); Widmark, 454 F.3d at 1068 ("Of course, [the claimant] is ultimately responsible for providing the evidence to be used in making the RFC finding."). Plaintiff does not point to, nor does the Court find, any new evidence in the record after the State agency physicians issued their opinions that would require further evaluation by a psychologist or medical provider. The Court finds that substantial evidence supports the ALJ's RFC findings.[8]

## V.

## CONCLUSION AND ORDER

In conclusion, the Court denies Plaintiff's motion for summary judgment and grants Defendant's cross motion for summary judgment finding no harmful error warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment appealing the decision of the Commissioner of Social Security is DENIED and Defendant's Cross motion for summary judgment is GRANTED. It is FURTHER ORDERED that judgment be

---

[8] The parties also disagree as to whether Plaintiff forfeited the argument regarding the completeness of the record by failing to raise it before the ALJ. Plaintiff relies on Balli, 2022 WL 14751485, which rejected the argument that the claimant had forfeited the argument by failing to raise the incompleteness of the record before the ALJ. However, the Court notes that the weight of authority finds that the argument is forfeited by failing to raise the issue of the need for a consultative examination before the ALJ. Johnson v. Saul, No. 1:19-CV-1647 JLT, 2021 WL 754197, at *3 (E.D. Cal. Feb. 26, 2021) (collecting cases); Smith v. Saul, No. 1:19-cv-01085-SKO, 2020 WL 6305830, at *7 (E.D. Cal. Oct. 28, 2020); Sophia L. v. Saul, No. 5:19-CV-01851-MAA, 2020 WL 7318133, at *4 (C.D. Cal. Dec. 11, 2020); Redmond v. Berryhill, No. 17-CV-01603-DMR, 2018 WL 3219437, at *13 (N.D. Cal. July 2, 2018). The Court finds it unnecessary to decide this issue. However, the Court does find that Defendant's has the stronger position where, as here, the claimant is represented by the same legal firm on appeal. It would appear inequitable to allow counsel to affirm that the record is complete before the ALJ, and then after receiving an unfavorable decision, argue error due to the failure to further develop the record.

entered in favor of Defendant Commissioner of Social Security and against Plaintiff Yolanda Alvarez Marin.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **August 16, 2024**

UNITED STATES MAGISTRATE JUDGE